CARLOS TRUEBA, Plaintiff and Appellant, v. BENITO ZALDUONDO, Defendant.—NATIONAL CITY BANK OF NEW YORK, SAN JUAN BRANCH, Intervenor and Appellee.

No. 3386. Argued February 11, 1925.—Decided November 20, 1925.

1. ATTACHMENT—INTERVENTION—THIRD PERSONS.—Intervention lies when a conflict arises between citizens regarding their better rights to collect their claims out of certain properties of a common debtor.

2. ID.—ID.—PLEDGE—SHARES OF STOCK—PUBLIC INSTRUMENT.—This being a case of a pledge of shares of stock as collateral, under section 320 of the Code of Commerce a public instrument is not necessary.

3. ID.—ID.—ID.—ID.—EVIDENCE.—A transfer of pledged shares of stock according to section 13 of the Private Corporations Act is an authentic element of evidence to establish in respect to a third person the legality of the contract of pledge.

4. ID.—ID.—ID.—ID.—Section 1766 of the Civil Code is not applicable to the pledge of shares of stock transferred in accordance with section 13 of the Private Corporations Act.

First District Court of San Juan, Charles E. Foote, J. Judgment for the intervenor with costs. *Affirmed.*

M. Tous Soto for the appellant. Chas. Hartzell and F. Ramírez de Arellano for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Carlos Trueba brought an action of debt against Benito Zalduondo and to secure the effectiveness of the judgment attached certain securities consisting of stock of the corporations La Compañía Azucarera del Toa and Porto Rico Steam Laundry.

The National City Bank of New York intervened in the action and after alleging that the same shares of stock had been endorsed and pledged to it and transferred in the books of transfer of stock of the said corporations to secure the payment of two promissory notes aggregating $11,450 falling due on March 3 1923, prayed for the dissolution of the attachment or for judgment to the effect that said shares of stock were preferably subject to payment of the said notes.

The complaint in intervention was demurred to for lack of cause of action and the demurrer was overruled. There-

upon the appellant moved for judgment for the purpose of establishing this appeal and the lower court sustained that motion.

The appellant assigns two errors as follows:

"First.—In authorizing the National City Bank of New York, San Juan Branch, to intervene in the case for the purpose of asserting its better right or preference to collect certain credits out of the proceeds of the sale of the stock attached in this suit.

"Second.—In overruling the demurrer for lack of cause of action and in holding that the complaint in intervention was sufficient to establish against third persons the existence of a contract of pledge."

[1] The question raised by the first assignment is not new. In the case of *Heirs of Garriga* v. *O'Meara & Co.,* 28 P.R.R. 332, it was held that intervention lies when a conflict arises between citizens regarding the better rights to collect their credits out of specified properties of a common debtor, and that doctrine was ratified in *Hernández-Acosta* v. *District Court of San Juan, ante,* page 652.

The second assignment of error seems to be of greater importance. It involves the construction that should be given to section 1766 of the Revised Civil Code, which reads as follows:

"Sec. 1766.—A pledge shall not be effective against a third person, when evidence of its date does not appear in a public instrument."

That a rule of evidence is involved does not admit of discussion.

The commentators on the Spanish Civil Code, from which the section quoted is reproduced (see sec. 1865 of said Code), sustain in relation to the rights of third persons that that provision is of a probatory character for the special purpose of preventing a fraudulent combination between a supposed or real debtor and a true or false creditor by obstructing the easy creation of securities by pledge

prejudicial to the rights of third persons. Sánchez Román, vol. 4, p. 987; Manresa, vol. 12, p. 417.

We might say that the same considerations are applicable to section 1195 of the Revised Civil Code, which reads as follows:

"Sec. 1195.—The date of a private instrument shall be considered, with regard to third persons, only from the date on which it may have been filed or entered in a public registry, from the death of any of those who signed it, or from the date on which it may have been delivered to a public official by virtue of his office."

The First Circuit Court of Appeals, in the cases of *Rucabado* v. *Longpré et al.* and *Aboy* v. *Longpré,* 239 Fed. 291, had occasion to construe the latter section in the same sense, and Mr. Justice Bingham, speaking for the court and holding that a conflict existed between section 1195 and the Law of Evidence, said:

"The Civil Code of Porto Rico went into effect July 1, 1902; but on March 9, 1905, its Legislative Assembly enacted a law, entitled 'An act to regulate the introduction of evidence in civil proceedings,' wherein it revised, enlarged, and in many respects, materially altered the law of evidence as theretofore provided for in its Code. Compilation of Revised Statutes and Codes of Porto Rico, pp. 276–298. This act went into effect July 1, 1905 (section 171), and in section 170 provided that 'all royal decrees, and general orders, acts and parts of acts in conflict with this act, are hereby repealed.' Nowhere in this act are to be found the provisions contained in section 1195 of the Code. By it 'public documents are such as are specified in article 1184 of the Civil Code' (section 45); 'all other writings are private' (section 46).

"In chapter 5 of the act, under the title 'Indirect Evidence, Inferences and Presumptions,' it states (section 96) that 'indirect evidence is of two kinds: (1) Inferences; and (2) Presumptions'; and, having defined the nature of an 'inference' and a 'presumption,' it states that 'a presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted the judge or jury are bound to find according to the presumption' (section 100). After stating that 'the following presumptions, and no others, are deemed con-

clusive' (section 101), it sets forth in seven paragraphs the circumstances under which presumptions of this class may arise. It then says that 'all other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence' (section 102). Thirty-nine disputable presumptions, and the circumstances under which they may arise, are set forth, among which are the following:

"(19) 'Private transactions have been fair and regular.'

"(23) 'A writing is truly dated.'

"The presumption that 'private transactions have been fair and regular' is not restricted in its application as to parties, and is entirely inconsistent with the fundamental idea embodied in section 1195, which is that private transactions are presumed as respects third persons to be unfair and irregular; and the presumption that 'a writing is truly dated' means that a writing, whether a public or private document, shall be presumed to have been executed on the date which it purports to have been. Both of these provisions are in conflict with the letter as well as the spirit of section 1195, and make it manifest that a fundamental change in the law was intended."

[2] It is well to make clear, however, that the decision of the Circuit Court of Appeals was rendered on December 6, 1916, and that evidently the said court was not informed that on March 7, 1912 (p. 113), after the enactment of the Law of Evidence, the Legislature of Porto Rico had enacted Act No. 65 entitled "An Act to amend sections 1195, 1247 and 1040 of the Civil Code," consequently preserving in full effect the same provision. But at any rate no legislative declaration was made in relation to section 1766 after the Law of Evidence went into effect and the force of the reasoning of the Circuit Court of Appeals in the cases cited seems to lead clearly to a similar conclusion with respect to section 1766 declaring its inconsistency with the Law of Evidence. In fact the provision of section 1766 is a rigid rule and seems to render impossible, if followed, a collusion between a supposed or true debtor and his real or feigned creditor for the purpose of injuring a third person. The rule is based on the theory of human weakness, which

is the opposite of what is sustained by the Law of Evidence, wherein the presumption prevails that mankind is naturally good. The latter presumption undoubtedly favors liberty of contract and by it the Spanish legislators seem to have been inspired in regulating the matter in the Code of Commerce which does not require a public instrument for pledging such securities as are herein involved. Its section 320 reads:

"A loan with a guaranty of securities quoted on exchange, contained in an instrument with the intermediation of licensed agents, shall always be considered commercial.

"The lender shall have, on the public bonds or securities pledged in accordance with the provisions of this section, a right to collect his credit with preference over other creditors, who can not deprive him of the possession of the securities unless they satisfy the loan made on the same."

Of course, as a substitute for the requisite of a public instrument there was the paper with the intervention of licensed agents. But when those loans were made by state institutions (*montes de piedad*), banks or legally organized societies, they could be contracted on special blanks which they had prepared *ad hoc* to carry out such transactions, according to a note to section 320 of the Code of Commerce, Gónhora's eleventh edition, p. 201.

Therefore, this is a case of a pledge of the securities enumerated in section 320 of the Code of Commerce. There is no instrument and certainly no intervention of a licensed agent, which by disuse seems to have disappeared in Porto Rico; but there appear other authentic means of evidence which entirely legalize the contract.

[3, 4] The complaint alleges that the shares of stock were endorsed by the debtor and pledged to the National City Bank of New York, San Juan Branch, and transferred in the books of transfers of stock of the respective issuing corporations as collateral security for the two obligations.

This was a formality carried out according to section 13 (Comp. 419) of the Private Corporations Act of March 9, 1911, a provision which no doubt is based on the same principle as section 1766 of the Civil Code, that is, the protection of third persons. A transfer under such conditions is an authentic element of evidence which the law itself determines to establish the legality of the contract of pledge as regards a third person.

Section 13 to which we have referred, sec. 419 Comp. Stat. of 1911, reads in part as follows:

"Whenever any transfer of shares shall be made for collateral security and not absolutely, it shall be so expressed in the entry of the transfer."

This is the evident demonstration that even if the effect of section 1766 had not been put in doubt after the Law of Evidence was approved, its inapplication to the pledging of stock transferred according to said section 13 results entirely clear.

For the foregoing reasons the judgment of the lower court should be affirmed.

Mr. Justice Wolf took no part in the decision of this case.